Hugh H. BOSWORTH, Jr. et al. *v.* James C. PLEDGER, Commissioner of Revenues, et al.; City of Fayetteville Arkansas, Arkansas Telephone Association, Inc., *Intervenors*

89-345                                    810 S.W.2d 918

Supreme Court of Arkansas
Opinion delivered June 3, 1991
[Rehearing denied July 1, 1991.]

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellants.

*Rick L. Pruett* and *Joyce Kinkaid*, for appellee James C. Pledger.

*Lary D. Vaught* and *Nelwyn Davis*, for appellees Venhaus, Tedford and Pulaski County.

*Mitchell, Williams, Selig & Tucker*, by: *Pat Moran* and *Michael C. O'Malley*, for appellee U.S. Sprint.

*Wright, Lindsey & Jennings*, by: *N.M. Norton, Jr.* and *Charles L. Schlumberger*, for appellee AT&T Communications.

*Rose Law Firm, A Professional Association*, by: *Amy Stewart* and *Preston, Thorgrimson, Shidler, Gates & Ellis*, by: *Carol S. Arnold*, for appellee MCI.

*James M. McCord*, for intervenors.

GEORGIA ELROD, Special Justice. This case involves the constitutionality of the 1987 Arkansas legislative enactment which extended the state sales tax to certain types of long distance telecommunications service while excepting others. In this class action challenge, the appellants, who are telephone subscribers upon whose telephone service the tax was imposed, argued that the tax was unconstitutional, on both First Amendment and Equal Protection Clause grounds. Appellees represented the state and local governmental agencies responsible for collecting the disputed tax as well as those providers of the long distance service involved, *e.g.*, AT&T Communications, Inc., MCI Telecommunications Corporation, and U.S. Sprint Communications Company. The chancellor held that the law was a valid and legitimate exercise of the state's power to tax and upheld its

constitutionality. We affirm.

Prior to the enactment of Section 2 of Act 27 of 1987 [Ark. Code Ann. § 26-52-301(3) (Supp. 1989)], the Arkansas Gross Receipts Tax, or sales tax, was imposed only on *intra*state long distance service. Interstate and international service were not subjected to the tax. In 1987 the law was changed, and the tax was imposed on all long distance telephone service billed to an Arkansas telephone number, excepting from the tax, however, two types of service: (1) private line service which is not accessible by the public, and (2) that service commonly known as WATS service. The relevant portions of section 26-52-301 provide as follows:

> There is levied an excise tax of three percent (3%) upon the gross proceeds or gross receipts derived from all sales to any person of the following:
> . . .
>
> (3)(A)(i) Service by telephone, telecommunications, and telegraph companies to subscribers or users, including transmission of messages or images, whether local or long distance.
> (ii) Taxable services shall include basic local service and rental charges, including all installation and construction charges and all service and rental charges having any connection with transmission of any message or image.
> (iii) Except as provided in subdivision (3)(iv) of this section, taxable long distance services shall include:
> (a) Long distance messages which originate and terminate within this state;
> (b) Interstate long distance messages which originate within this state and terminate outside this state and are billed to an Arkansas telephone number or customer location;
> (c) Interstate long distance messages which originate outside of this state and terminate within this state and are billed to an Arkansas telephone number or customer location.
> (iv) However, the following services shall not be subject to the tax:

(a) Any interstate private communications service which is not accessible by the public;

(b) Any interstate service which allows access to private telephone lines and which is not accessible by the public; or

(c) Any interstate-wide area telecommunications service or other similar service which entitles the subscriber to make or receive an unlimited number of communications to or from persons having telecommunications service in a specified area which is outside the state in which the station provided with this service is located.

(v) This tax shall apply to all customer access line charges billed to an Arkansas telephone number. Access line charges are those charges associated with or for access to the long distance network. However, access or other telecommunication services provided to telephone, telegraph, or telecommunications companies which will be used to provide telecommunications services shall not be subject to this tax.

Appellants do not challenge the exception for private line service, contending only that the tax was improperly imposed on, and thus discriminated against, Arkansas subscribers to long distance telephone service not of the WATS variety.

Although the record below contains much evidence on the complex aspects of telecommunications technology and rate structure, the chancellor found that the differences between the two types of service, one taxed and the other not, could be described as follows:

(1) "Regular" long distance service (sometimes called MTS service) is billed on a per call basis with the charge for each call generally depending on the day of the week and the time of the day at which the call is made, the geographic distance of the call, and the temporal length of the call. This is the most common type of long distance service and is usually subscribed to by those who may, in addition, use WATS service. This service is subjected to the sales tax.

(2) Wide-area telecommunications service, commonly known as WATS, is where the subscriber is charged a flat fee for the service, receiving then a lower rate for each call made or

received. This category is broken down between incoming WATS, or "800 service," and outgoing WATS. This service is not subjected to the tax.

The chancellor also found that "[t]he main difference between WATS and MTS is in rate design," and that both services are available to any customer, with no eligibility requirements. Appellants, plaintiffs below, all subscribe to "regular" long distance service and none to WATS service. All parties generally agreed that a customer must have a high volume of telephone usage in order to justify economically the use of WATS.

■ Appellants' constitutional challenge to Section 2 of Act 27 of 1987 is based upon the state's purported violation of the equal protection provisions of both the Arkansas[1] and U. S.[2] Constitutions. Their argument, made in the trial court, that the statute violated the Commerce Clause of the U. S. Constitution, was definitively decided against them during the course of this litigation by the U. S. Supreme Court in *Goldberg* v. *Sweet*, 488 U.S. 252, 109 S. Ct. 582 (1989) and was not argued on appeal. Appellants' argument that their due process rights under the U. S. and Arkansas Constitutions were violated because the statute was unclear, or void for vagueness, was not properly presented at the trial court level, nor addressed by the chancellor in her findings of fact and conclusions of law. Likewise, the chancellor did not address appellants' point, argued on appeal, that the statute was ambiguous. Thus, neither of these latter issues will be addressed by this court. *Shamlin* v. *Shuffield*, 302 Ark. 164, 787 S.W.2d 687 (1990).

We are called upon to answer three questions in resolving the constitutional issues presented by this case: (1) Does the imposition of the tax discriminate against or among individuals? (2) If so, what standard is to be applied in testing the legitimacy of the law, a "rational basis" standard or one which requires the showing of a compelling state interest? (3) And, finally, does the statute meet the requisite standard? These questions will be addressed in turn.

---

[1] Ark. Const. art. 2, §§ 3 and 18.
[2] U.S. Const. amend. 14.

## I

In deciding whether an equal protection challenge is warranted, there must first be a determination that there is a state action which differentiates among individuals. "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. 14. Appellees argue that the threshold element of classification of individuals is not met because the only distinction made by the statute is between *services*, not people. Appellees cite *Potts* v. *McCastlain*, 240 Ark. 654, 401 S.W.2d 220 (1966), *cert. denied*, 358 U.S. 946 (1967), where this court upheld a privilege tax imposed on taxicabs but not on other vehicles using the same streets. They argue that as long as all "regular" long distance subscribers are taxed the same, just as all taxicab operators were taxed the same, there is no differentiation among individuals, all being treated equal. In addition, appellees cite the chancellor's finding that "all three types of service — MTS, private line, and WATS — are available to any customer; there are no eligibility requirements," to bolster their argument that this is a tax imposed on services, not individuals.

Although it is true that the tax is imposed on one type of long distance service and not another, it is also true that taxes are paid by individuals, and the record reflects that subscribers to "regular" long distance service pay the tax, while subscribers to WATS service do not. This disparate treatment under the statute of classes of individuals is sufficient to raise the equal protection challenge and require our further analysis.

## II

Once equal protection is invoked, we must then decide what standard of analysis applies. In other words, we must determine whether it is necessary only to show some rational basis for the classification, or whether the statute impinges on a fundamental right or is based on a suspect criterion, in which case the state is required to prove not only that the statute is reasonable but also that it promotes a compelling state interest. Appellants argue for the application of the stricter standard because their constitutional rights of free speech are imperiled; appellees contend reasonableness alone is required.

The U.S. Supreme Court recognized the broad discretion legislatures have in formulating tax policy in *Madden* v. *Kentucky*, 309 U.S. 83, 87-88 (1940):

> The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. ... [T]he passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.

■■ In *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983), this court considered an equal protection challenge to a state income tax law which provided an exemption on retirement income from certain government sources but denied the exemption to private retirement income. In upholding the exemptions as valid exercises of the state's taxation powers, we stated:

> The rational basis test has long been applied by the Supreme Court in reviewing state legislation under the equal protection clause of the 14th Amendment which imposed special burdens or granted exemptions from such burdens through classification schemes. . . .
>
> Under the rationality standard of review, we must presume the legislation is constitutional, i.e. that it is rationally related to achieving a legitimate governmental objective.

*Id.* at 212-13, 655 S.W.2d at 463.

While acknowledging the applicability of the rational basis analysis to a state's taxation powers, appellants argue that in this

case the court should apply a higher standard because their First Amendment protections under the U.S. Constitution have been abridged. Appellants assert that they have a "fundamental right" to exercise "free speech" by transmissions over the telephone, and because these rights are implicated in the tax-based classification between long distance subscribers, the state must show that it has a compelling state interest to justify the infringement. In support, appellants cite *Minneapolis Star & Tribune Co.* v. *Minnesota Comm'r of Revenues*, 460 U.S. 575 (1983); *Arkansas Writers' Project, Inc.* v. *Ragland*, 287 Ark. 155, 697 S.W.2d 94 (1985), *reh'g denied*, 287 Ark. 155, 698 S.W.2d 802 (1985), *rev'd*, 481 U.S. 221 (1987); and *Medlock* v. *Pledger*, 301 Ark. 483, 785 S.W.2d 202 (1990), *rev'd sub nom. Medlock* v. *Leathers*, ___ U.S. ___, 111 S. Ct. 1438 (1991).

*Minneapolis Star, supra*, involved a special use tax on the cost of paper and ink consumed in the production of publications, exempting the first $100,000 used, with the result that only a few of the largest publishers were taxed. The Court invalidated the tax, citing First Amendment infringement with no compelling state interest to redeem it. *Arkansas Writers' Project, supra*, invalidated an Arkansas law which taxed general interest magazines but exempted from the sales tax, sales of religious, professional, trade and sports magazines.

Both *Minneapolis Star* and *Arkansas Writers' Project* are distinguishable from the present case, as both of those cases involved a form of censorship by the state. In *Minneapolis Star* there was censorship of the speaker, i.e., the largest newspapers, and in *Arkansas Writers' Project* there was censorship of the content, i.e., that contained in general interest magazines. In the present case there is no attempt to censor based on content or to discriminate among classes of speakers. Act 27 imposes a tax on every use of the types of long distance services that are subject to the tax, regardless of the purpose for which the customer uses the service, what the customer says while using the service, or the identity of the service provider.

The case most closely on point, and to this court determinative of the First Amendment question, is *Medlock, supra*, where the constitutional validity of a sales tax on cable television service was challenged. The tax was levied on cable television service, but

not on similar services, such as satellite television programming. Although this court determined the tax unconstitutional because of First Amendment infringement, the U.S. Supreme Court saw otherwise and held that the law in question did not threaten to suppress the expression of particular ideas or viewpoints, nor did it target a small group of speakers or discriminate on the basis of the content of taxpayers' speech. None of these three elements being present, the tax was not constitutionally vulnerable on First Amendment grounds.

> The Arkansas Legislature has chosen simply to exclude or exempt certain media from a generally applicable tax. Nothing about that choice has ever suggested an interest in censoring the expressive activities of cable television. Nor does anything in this record indicate that Arkansas' broad-based, content-neutral sales tax is likely to stifle the free exchange of ideas. We conclude that the State's extension of its generally applicable sales tax to cable television services alone, or to cable and satellite services, while exempting the print media, does not violate the First Amendment.

*Medlock* v. *Leathers*, ___ U.S. at ___, 111 S. Ct. at 1447.

We therefore hold that Act 27 of 1987 does not violate appellants' First Amendment rights, and the stricter standard of review is inapplicable. The appropriate analysis, therefore, is whether there exists for the classification any rational basis which provides a "deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government and void of any hint of deliberate and lawful purpose." *Streight* v. *Ragland*, 280 Ark. 206, 215, 655 S.W.2d 459, 464 (1983).

### III

The burden is upon appellants to demonstrate the lack of rational basis for the tax. *Streight, supra.* The legislature has the discretion, within reasonable limits, to determine the scope of the exercise of its taxing power, and there is a presumption in favor of the validity of its action. *Potts* v. *McCastlain*, 240 Ark. 654, 401 S.W.2d 220 (1966), *cert. denied*, 358 U.S. 946 (1967).

■ A state has wide latitude in the exercise of its power of taxation. The power to tax necessarily implies the power to discriminate in taxation. The law does not dictate that taxing measures be applied to all members of a class or none. Distinctions are permissible, and if there is any conceivable set of facts to uphold the law's rational basis, it will be upheld. *Carmichael* v. *Southern Coal Co.*, 301 U.S. 495 (1937); *Dicks* v. *Naff*, 255 Ark. 357, 500 S.W.2d 350 (1973).

In determining whether a rational basis for the legislation exists, we are not required to discover the *actual* basis for its enactment, but rather we are allowed to hypothesize the facts giving rise to the classification.

Testimony in the trial court indicated that WATS or WATS-like service tended to be used by large volume consumers of telephone service. It is not economically feasible to purchase WATS service unless the consumer has a large volume of long distance telephone usage; thus the WATS customer is more likely to be a business subscriber than to be an individual residential subscriber.

The State of Arkansas has a long history of providing tax incentives to commerce as a means to encourage businesses to stay and locate in this state, and, certainly, economic development is a legitimate and worthy governmental goal. For example, the "enterprise zone" legislation gives a tax advantage to industries that locate in economically depressed areas, Ark. Code Ann. § 15-4-807 (Supp. 1989), and the motion picture industry is accorded tax incentives in order to encourage film making in this state. Ark. Code Ann. § 26-4-206 (1987), and § 26-52-402(c)(3) (1987).

■ The legislature may have intended, in the enactment of Section 2 of Act 27 of 1987, to encourage large volume users of telephone service, i.e., WATS subscribers, to remain or relocate in Arkansas. We agree with the chancellor's finding that this basis for the legislation would be rationally related to achieving a legitimate governmental objective.

It is not the job of this court to evaluate the wisdom of our legislature in enacting tax measures, which inevitably will fall more heavily on some than on others. Our task is to protect

against classifications which are arbitrary and without reason. As the United States Supreme Court stated in *City of New Orleans v. Dukes*, 427 U.S. 297, 303-304 (1976):

> States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.... [T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines, . . . in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

Once we have reached the conclusion, as we have in this case, that a legitimate governmental purpose could be served by the legislation, and even though we do not know with certainty the actual underlying reasons for the law's enactment, we must bring our analysis to a close. We therefore confirm the constitutionality of the law and affirm the chancellor's decision.

Affirmed.

Special Justices JOHN R. BYRD, JAMES H. PILKINTON, JR., and DAVID M. GLOVER join in this opinion.

DUDLEY, HAYS, NEWBERN, and GLAZE, JJ., not participating.