Jim C. PLEDGER, Commissioner of Revenues, et al. *v.*
BRUNNER AND LAY, INC., et al.

90-293 825 S.W.2d 599

Supreme Court of Arkansas
Opinion delivered March 2, 1992

 

*Beth B. Carson*, Revenue Counsel, for appellant.

*Hilburn, Calhoun, Harper, Pruniski & Calhoun, Ltd.*, by: *Carrold E. Ray & Dorcy Kyle Corbin*, for appellee.

LONNIE R. BEARD, Special Justice. This case involves what has been styled as an illegal exaction action brought by the named appellees in their own behalf and as representatives of classes of taxpayers similarly situated. The specific transactions involved in this case were purchases, by the named appellees, of a used airplane, a used motor vehicle, and a used mobile home. All three items were purchased outside of Arkansas for use in this state, and the Arkansas Department of Finance and Administration has imposed or has sought to impose a use tax on these transactions.

Under the Arkansas sales and use tax exemption scheme in effect at the time of the transactions involved in this case, the purchases at issue herein would have been exempted from the Arkansas use tax if an *Arkansas* sales or use tax had been imposed with respect to any prior sale or purchase of the airplane, motor vehicle, or mobile home. Moreover, the purchase of the motor vehicle and mobile home would have been exempted if they had previously been registered with the Arkansas Department of Motor Vehicles, regardless of whether an Arkansas sales or use tax had been imposed with respect to a prior sale or purchase of the item.

This is an appeal from the decision of the Pulaski County Chancery Court, First Division, Chancellor Lee A. Munson. The Chancellor ruled that the Arkansas sales and use tax exemption scheme discriminated against the named appellees and class members in violation of the equal protection provisions of the Fourteenth Amendment and discriminated against interstate commerce in a manner prohibited by the commerce clause of the Constitution of the United States. The Chancellor enjoined collection of the use tax from the taxpayers represented in the certified classes who had not yet paid the tax, and ordered that class members who had already paid the tax be permitted to seek refunds if such claims were not barred by the applicable statute of

limitations.

Appellants, a class of defendants representing State, county, and municipal taxing authorities, challenge these rulings and in addition raise several procedural issues, principally involving the propriety of the class certifications. We find it unnecessary to address the procedural issues in detail, because we disagree with the Chancellor's rulings on both the equal protection and commerce clause issues. Reversed and remanded.

## I

### *Appellee Brunner & Lay, Inc.*

Appellee Brunner & Lay, Inc. is a Delaware Corporation which has a manufacturing and sales facility located in Springdale (Washington County), Arkansas. On April 4, 1984, Brunner & Lay, Inc. purchased a used airplane in Massachusetts for $825,000 from another corporation. The corporate seller had originally purchased the airplane new, and had paid a Massachusetts use tax on that original purchase. However, no Massachusetts sales tax was paid with respect to the sale to Brunner & Lay, Inc.

After audit, the Arkansas Department of Finance and administration proposed an assessment of a four percent State and a one percent (subject to a $25 limit) Washington County use tax with respect to the storage and use of the airplane in Arkansas. The proposed assessment of the State use tax was made under a general use tax provision levying an excise tax on the "privilege of storing, using, or consuming within this State any article of tangible personal property purchased for storage, use, or consumption in this state. . . ."[1] A credit against the Arkansas use tax would be allowable for any sales or use tax paid by Brunner & Lay, Inc. to another State with respect to the purchase of the airplane,[2] but since no such tax was paid, no credit against the Arkansas use tax is available.

---

[1] As to the State use tax imposed, see specifically Ark. Code Ann. §§ 26-53-106 and 26-53-107 (1987), and see, generally, Ark. Code Ann. §§ 26-53-101 etc. seq. One percent countywide use taxes, subject to a limit of $25 with respect to a single transaction, are authorized by Ark. Code Ann. §§ 26-74-201 et. seq.

[2] Ark. Code Ann. § 26-5-101(V) (1987).

If the airplane had been purchased in Arkansas it would generally have been subject to comparable State and county sales taxes.[3] Exemptions from both the Arkansas sales and use taxes would have been available, however, if an Arkansas sales or use tax had been imposed with respect to a previous sale of the airplane,[4] but no exemption or credit was allowable for sales or use taxes paid to *other* States with respect to *prior* sales of the airplane.

Brunner & Lay, Inc. objected to the proposed assessment, and the Arkansas use tax has not been assessed or paid.

### *Appellee Robert Wilkinson*

On December 12, 1985, Robert N. Wilkinson, a resident of Lee County, Arkansas, purchased a used automobile in Tennessee. A Tennessee sales tax had been imposed when the automobile had originally been purchased new in Tennessee, but no Tennessee sales tax was imposed with respect to the sale to Mr. Wilkinson.

On bringing the automobile to Arkansas, Mr. Wilkinson paid a four percent State[5] and a one percent county[6] (subject to a $25 limit) use tax at the time he registered the automobile in Arkansas. A credit would have been allowed to Mr. Wilkinson if he had paid a sales or use tax to another State with respect to his purchase of the automobile.[7]

If the automobile had been purchased in Arkansas, it would generally have been subject to comparable State and county sales taxes.[8] However, the purchase of the automobile in Arkansas

---

[3] See Ark. Code Ann. §§ 26-52-301(1) and 26-52-302 (1987) as to the State sales tax and Ark. Code Ann. § 26-74-201 et seq. as to county sales taxes.

[4] These exemptions were partially eliminated by 1991 Act No. 3, § 5. However, before the amendment, the sales and use tax exemptions were located at Ark. Code Ann. §§ 26-52-505(b) and Ark. Code Ann. § 26-53-112(2) (1987), respectively.

[5] The State sales tax was imposed by Ark. Code Ann. §§ 26-53-106(a) and 26-53-107 (1987).

[6] The county use tax was authorized by Ark. Code Ann. § 26-74-201 et seq. The $25 limit is imposed by Ark. Code Ann. 26-74-220(a) (1987).

[7] Ark Code Ann. § 26-5-101(V) (1987).

[8] See Ark. Code Ann. §§ 26-52-301(1) and 26-52-302(a) (1987) as to State sales taxes and Ark. Code Ann. §§ 26-74-201 et. seq. for the legislative authorization of

would have been exempted from the sales tax if an Arkansas sales or use tax had been imposed on a prior sale of the automobile.[9]

Wilkinson subsequently filed a claim for refund of the tax, but such claim was denied.

### Bobby and Georgia McLaughlin

On August 3, 1984, Bobby and Georgia McLaughlin, residents of Nashville, Arkansas, purchased a used mobile home in Oklahoma. The McLaughlins paid a four percent Arkansas use tax at the time the mobile home was registered in Arkansas. A credit would have been allowable against the Arkansas tax for any sales tax paid to Oklahoma with respect to the purchase, but since no such sales tax was paid, no credit was allowable.

The mobile home would generally have been subject to a comparable sales tax if the purchase had been made in Arkansas, but an exemption would have been allowable with respect to both the Arkansas sales and use tax if an Arkansas sales or use tax had been imposed on a previous sale of the mobile home.[10]

No administrative claim for refund was filed by the McLaughlins.

## II

### Procedure

■ Appellants raise several procedural issues concerning the propriety of the class certifications below and the nature of the actions. Appellants conclude that "only Appellee Brunner & Lay, Inc. and its class of post-suit airplane purchasers, and Appellee Wilkinson have standing to prove this case." Even if this court were to agree with this conclusion, a matter we need not decide, the issue of the constitutional validity of the general sales and use tax exemption scheme in question would still be properly

---

countywide sales taxes.

[9] The exemption from the State sales tax was found at Ark. Code Ann. § 26-52-510(b) before its amendment by 1991 Act No. 3, § 6, which repealed the exemption with respect to sales of automobiles for a total consideration of more than $2,000. The exemption from the State use tax was provided by Ark. Code Ann. § 26-53-126(b) (1987). This exemption was similarly curtailed by 1991 Act No. 3, § 7.

[10] This exemption was also partially repealed by 1991 Act No. 3, § 4.

before this court. Because we believe our disposition of the constitutional issues would have a similar impact whether the class of appellees is as broad as certified by the Chancellor or as narrow as claimed by the appellants, we decline to rule on the propriety of the class certifications.

### III

### *Equal Protection*

The Chancellor concluded that the Arkansas sales and use tax exemptions scheme impermissibly discriminated against out-of-state purchases, for use or storage in Arkansas, of used airplanes, motor vehicles, and mobile homes. In the Chancellor's view, there were two fatal distinctions made in the exemption scheme between sales of used airplanes, motor vehicles, and mobile homes *in* Arkansas and purchases of such used items outside of Arkansas for use or storage in this State.

First, the essential thrust of the Arkansas sales and use tax exemption scheme was to exempt sales and purchases of used airplanes, motor vehicles, and mobile homes with respect to which an *Arkansas* sales or use tax had been imposed on a previous sale or purchase. If, for example, a new motor vehicle (or airplane or mobile home) were sold in Arkansas and an Arkansas sales tax paid with respect to that sale, a subsequent sale of that motor vehicle (or airplane or motor home) was exempt from both the Arkansas sales and use tax. Under this scheme most sales of used motor vehicles in Arkansas were exempted from an Arkansas sales or use tax because, as a practical matter, an Arkansas sales or use tax would usually have been previously paid when the motor vehicle had originally been sold new in Arkansas.

On the other hand, if, for example, a used motor vehicle (or airplane or mobile home) were purchased in another State for use or storage in Arkansas, it would generally *not* be exempted from the Arkansas use tax, even if a sales or use tax of another State had previously been imposed with respect to the original sale of the motor vehicle when it was new, since the Arkansas exemption was generally available only where an *Arkansas* sales or use tax, not that of some other State, had been imposed with respect to a prior sale or purchase of the motor vehicle.

The second fatal distinction, in the view of the Chancellor,

made by the Arkansas sales and use tax exemption scheme was relevant only to sales and purchases of used motor vehicles and mobile homes. Sales or purchases of these items, but not airplanes, was exempted from an Arkansas sales or use tax if the motor vehicle or mobile home had previously been registered with the Arkansas Department of Motor vehicles, regardless of whether a prior sale of such items had been subjected to an Arkansas sales or use tax.[11] For example, if a motor vehicle were purchased new in another State by a resident of that State for use there, that sale would not be subject to an Arkansas sales or use tax. If the purchaser subsequently moved to Arkansas and registered the motor vehicle (or motor home) with the Arkansas Department of Motor Vehicles[12], no sale or use tax would be imposed at the time of registration because the registration itself would not be a taxable event under the Arkansas sales and use tax provisions. A subsequent sale of the motor vehicle after registration in Arkansas would then be exempted from an Arkansas sales or use tax even though no such Arkansas tax had ever been imposed on a prior sale or purchase of the vehicle.

We address these distinctions separately, since only the first is potentially applicable to sales and purchases of all three types of properties (airplanes, motor vehicles, and mobile homes) involved in this case.

■ The Supreme Court of the United States has often said that "States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." See *Williams* v. *Vermont*, 472 U.S. 14, 22; 105 S.Ct. 2465, 2471; 86 L.Ed.2d 11, 19 (1985). The Arkansas sales and use tax scheme which exempts sales of used airplanes, motor vehicles, and mobile homes with respect to which an *Arkansas* sales or use tax was imposed on a *prior* sale or purchase will be upheld against an equal protection challenge "if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose." *Wil-*

---

[11] See, before amendment by 1991 Act No. 3, §§ 3, 4, and 7, Ark. Code Ann. §§ 26-52-510(b)(2), 26-52-504(b), 26-52-504(c), 26-53-126(3), and 26-53-112(2) (1987).

[12] Motor vehicles and mobile homes are required to be registered with the Arkansas Department of motor vehicles. Airplanes, on the other hand, are not. See Ark. Code Ann. § 27-14-701 et. seq.

*liams* v. *Vermont, supra,* 472 U.S. at 22-23; 105 S.Ct. at 2471; 86 L.Ed.2d at 19. The parties in this case did not argue nor did the Chancellor conclude that a higher standard of scrutiny was required to evaluate the Arkansas sales and use tax scheme.

As this court recently reiterated, the "power to tax necessarily implies the power to discriminate in taxation." *Bosworth* v. *Pledger,* 305 Ark. 598, 608; 810 S.W.2d 918, 922 (1991). This court will presume that the challenged classification will promote a legitimate State purpose, and thus pass equal protection muster, if there is "any conceivable set of facts to uphold the law's rational basis. . . ." *Bosworth* v. *Pledger,* 305 Ark. at 608; 810 S.W.2d at 922-923. We can presume a legitimate State purpose from either the actual reasons for the legislative classification or from reasons we can hypothesize. *Bosworth* v. *Pledger,* 305 Ark. at 608; 810 S.W.2d at 923.

Appellants advanced the theory that the exemption for used motor vehicles and motor homes with respect to which an Arkansas sales or use tax had been imposed on a prior sale or purchase was intended to lessen the burden on lower income residents of Arkansas who are more likely to seek transportation or shelter through purchase of a used motor vehicle or mobile home. Appellants suggested that the exemption for airplanes with respect to which an Arkansas sales or use tax had previously been imposed was simply another of the many credits and incentives the Arkansas legislature has granted to businesses, that lessening the tax burden with respect to sales and purchases of used aircraft would make such aircraft more affordable to Arkansas businesses, and make businesses which could utilize aircraft more competitive.

The Chancellor rejected these arguments and concluded that no legitimate State purpose was served by basing an exemption on whether a prior sale of the airplane, motor vehicle, or mobile home had been subject to an *Arkansas* sales or use tax. If helping the poor and helping Arkansas businesses by making used motor vehicles, mobile homes, and airplanes more affordable was to be the purpose of the sales and use tax exemptions, concluded the Chancellor, "[t]hese state purposes would have been better served by exempting *all* sales and purchases of used airplanes, motor vehicles and mobile homes." (Emphasis added.)

The Chancellor's conclusion reflects an overly restrictive view of the scope of the legislative discretion in exercising its taxing powers, and ignores the competing interests the legislature must balance in determining whether and to what extent to exercise those taxing powers.

Taxing *all* sales and purchases of airplanes, motor vehicles, and mobile homes, including those that may have been subjected to one or more prior Arkansas sales or use taxes would obviously maximize the revenue raising potential of sales of such items.[13] On the other hand, exempting *all* such sales and purchases from the Arkansas sales and use tax would maximize the objective of making motor vehicles and mobile homes more affordable to the lower income residents of this State, and airplanes more affordable to Arkansas businesses which could utilize them.

■ However, this court will not force the legislature to choose between these competing considerations as if they were all-or-nothing, mutually inconsistent, objectives. We believe the legislature could engage in a rational balancing of objectives.

■ Although the sales and use tax is a transactional tax rather than a property tax, the tax nevertheless becomes part of the tax history of a particular item. The legislature could have rationally concluded that a particular motor vehicle's use of the State's roadways, a mobile home's benefit from police and fire protection, and an airplane's use of the State's airport facilities throughout their respective useful lives in Arkansas justify taxing at least one sale or purchase of such items as a means of raising revenues.

That the legislature also determines that considerations of equity to lower income residents and a wish to encourage the growth of Arkansas businesses mitigate against taxing additional, sequential sales and purchases of airplanes, motor vehicles, and mobile homes is a choice within its rational discretion.

The second fatal distinction made in the sales and use tax scheme, in the view of the Chancellor, existed only with respect to motor vehicles and mobile homes. Sales of such were exempted

---

[13] The legislature has in fact now moved further in the direction of maximizing revenues by partially repealing the exemptions at issue in this case. See 1991 Act No. 3.

from the Arkansas sales and use tax if they had been previously registered with the Arkansas Department of Motor Vehicles whether or not an Arkansas sales or use tax had been paid on a prior sale or purchase of the item. The reason for this distinction, we hypothesize, was one of administrative convenience, coupled, again, with considerations of equity. The language of the exemption with respect to motor vehicles, we believe, supports this hypothesis, in providing that it is the intent of the legislature to exempt motor vehicles which have already been subjected to a sales or use tax "as *evidenced by* previous registration in the State of Arkansas." Ark. Code. Ann. § 26-52-510(b)(2) (1987). (Emphasis added.)

The *initial* registration of a motor vehicle or mobile home in Arkansas was the point at which Arkansas taxing authorities insured the enforcement and collection of any applicable, yet unpaid, Arkansas sales or use tax. On the other hand, that initial registration would be an appropriate point for insuring the collection of the sales or use tax only if the registration accompanied a sale or purchase of a motor vehicle or mobile home which would properly be subject to an Arkansas sales or use tax. If a motor vehicle or mobile home were purchased out of this State in a transaction not properly subject to an Arkansas sales or use tax, and the purchaser subsequently moved to Arkansas and registered the motor vehicle or motor home, no Arkansas sales or use tax would have been due at the time of registration. The registration itself is not the taxable event under the sales and use tax scheme, only the point at which any properly imposed but unpaid Arkansas sales or use taxes would be collected.

It appears that the Arkansas legislature might have taken one of three possible approaches to the potential "loophole" of exempting previously registered motor vehicles and mobile homes regardless of whether an Arkansas sales or use tax had been imposed with respect to a prior sale or purchase. First, it could have imposed a tax on the initial act of registration itself where no Arkansas sales or use tax had been properly payable on a prior sale or purchase of that particular motor vehicle or mobile home. A tax on the act of registration itself was upheld by the highest court of West Virginia with respect to the registration of a motor vehicle in that State even though the motor vehicle had been purchased out of state by a nonresident who subsequently

moved to West Virginia, and even though no credit was given against the registration tax for the sales tax paid on the purchase in the other State. See *J.C. Penney Co., Inc.* v. *Hardesty*, 264 S.E.2d 604 (W.Va. 1979).

Second, the legislature could have eliminated the focus on the initial registration as the point at which any properly imposed but unpaid Arkansas sales and use taxes would be collected. Thus, a sale or purchase of a motor vehicle or mobile home could be subjected to an Arkansas sales or use tax if no such tax had been imposed on a prior sale or purchase of the item even if the particular motor vehicle or mobile home had previously been registered in Arkansas.

■ The third approach, and the one chosen, was to tie the collection of a properly imposed Arkansas sales or use tax to the initial registration only. Potential justifications for this choice are not difficult to discern. If the first registration were not the point at which unpaid sales or use taxes were collected, those who purchased a used motor vehicle or mobile home would not be able to simply rely on a prior registration in Arkansas as evidence of an exemption from the sales or use tax. The legislature could have rationally concluded that the administrative burden of having to ascertain the actual prior sales and use tax history of a particular motor vehicle or mobile home each time a new owner sought to register it outweighed any potential revenue loss resulting from simply relying on a prior registration in Arkansas for proof that the exemption were applicable.

### Commerce Clause

The Chancellor determined that the same two distinctions inherent in the Arkansas sales and use tax exemption scheme that denied appellees as a class equal protection under the laws also discriminated against interstate commerce in violation of the commerce clause of the Constitution of the United States.[14] Because sales and purchases of used airplanes, motor vehicles, and mobile homes were generally exempted from the Arkansas

---

[14] The commerce clause, Article 1, § 8, cl. 3, gives Congress the power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

sales and use tax only where an *Arkansas* sales or use tax had been imposed with respect to a prior sale or purchase or, in the case of motor vehicles and mobile homes, if the item had previously been registered with the Arkansas Department of Motor Vehicles, the Chancellor concluded that "The effect of Arkansas' sales and use tax scheme is to favor Arkansans who wish to dispose of their used property over similarly situated residents of other states who wish to dispose of the same types of used property."

The commerce clause "has served as the battleground for the majority of use tax litigation."[15] The Supreme Court over forty years ago noted that "The history of this problem is spread over hundreds of volumes of our Reports." *Freeman* v. *Hewitt*, 329 U.S. 249, 252; 67 S.Ct. 274, 276; 91 L.Ed. 265, 271 (1946). More recently the court has referred to its commerce clause cases "as a 'quagmire' of judicial responses to specific state tax measures. . . ." *American Trucking Associations, Inc.* v. *Scheiner*, 483 U.S. 266, 280; 107 S.Ct. 2829, 2838; 97 L.Ed.2d 226, 241 (1987).

The court first upheld a general use tax scheme as a counterpart to a State's general sales tax scheme in *Henneford* v. *Silas Mason Co., Inc.*, 300 U.S. 577; 57 S.Ct. 524; 81 L.Ed. 814 (1937). Ironically, the premise of that decision seemed to be that the typical use tax is not a tax on interstate commerce at all. "The tax is not upon operations of interstate commerce, but upon the privilege of use after commerce is at an end." 300 U.S. at 582; 57 S.Ct. at 526; 81 L.Ed. at 818.

However, the notion that a typical use tax need not be evaluated in terms of commerce clause limitations was at least impliedly rejected by *Halliburton Oil Well Cementing Company* v. *Reily*, 373 U.S. 64, 83 S.Ct. 1201; 10 L.Ed.2d 202 (1963). This case, on which the Chancellor principally relied, struck down a Louisiana use tax as applied to an out-of-state purchase of a used airplane for use in Louisiana. The purchase would have qualified for an "isolated sales" exemption if the sale had taken place in Louisiana, but there was no equivalent exemption under the use

---

[15] Comment, "Compensating Use Taxes: Past and Present Constitutional Problems in Imposition and Collection," 18 *Ark L.Rev.* 321, 326 (Winter 1965).

tax for similar out-of-state purchases. The court said that "The conclusion is inescapable; equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state." 373 U.S. at 70; 83 S.Ct. at 1204; 10 L.Ed.2d at 207. The court indicated that the effect of limiting the isolated sales exemption to in-state sales only "is to favor local users who wish to dispose of equipment over out-of-state users similarly situated." 373 U.S. at 73-74; 83 S.Ct. at 1206; 10 L.Ed.2d at 209.

■ *Halliburton*, however, is not the last word on what is required for a use tax to satisfy commerce clause limitations. The Supreme Court in *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977) set out a four-part test to be applied in determining the constitutionality under the commerce clause of a Mississippi gross receipts tax imposed on the privilege of doing business in Mississippi. Under this test a tax affecting interstate commerce would be valid if it (1) "is applied to an activity with a substantial nexus with the taxing State", (2) "is fairly apportioned", (3) "does not discriminate against interstate commerce", and (4) "is fairly related to the services provided by the State."

■ This court has accepted that the *Complete Auto Transit* tests will be applicable "whenever there is a challenge to any state tax on interstate commerce"[16], but application of these tests to this case seems to provide little assistance in our analysis. The first and fourth prongs of the test seem easily satisfied. The named individual appellees were residents of Arkansas at the time of the purchases of the motor vehicle and mobile home involved herein, and both out-of-state purchases were for use and storage in Arkansas. The Delaware corporation which purchased the used airplane had a permanent residence in this State through location of a manufacturing and sales facility in Springdale. If these contacts are insufficient to satisfy the first and fourth prongs, it would be difficult to imagine a use tax that could be properly imposed, and in fact the appellees do not argue nor did the Chancellor find that there were insufficient contacts with this

[16] See *Burlington Northern R. Co.* v. *Ragland*, 280 Ark. 182, 186; 655 S.W.2d 437, 439 (1983).

State to justify imposition of the use tax.

■ The second prong, that the tax be fairly apportioned, is also satisfied. The Supreme Court has indicated that that requirement is clearly met with respect to a use tax where a credit is allowable for any sales tax paid to another State with respect to the same purchase. *D.H. Holmes Co. Ltd.* v. *McNamara*, 486 U.S. 24, 31; 108 S.Ct. 1619, 1623-1624; 100 L.Ed.2d 21, 28 (1988).

The primary thrust of the appellees' argument and the Chancellor's findings go to the third prong, that the tax not discriminate against interstate commerce, and that brings us back to *Halliburton, supra,* and we believe that case to be distinguishable. The exemption at issue therein (for isolated sales taking place within the State of Louisiana only) was one which expressly depended on *where* the transaction took place.

■ The principal object of the Arkansas sales and use tax exemption scheme, on the other hand, was to tax only *one* sale or purchase of a particular airplane, motor vehicle, or mobile home, and no more. It should be emphasized that the exemption did *not* depend on the residency of either the seller or the buyer, or on the location, in or out of this State, of the sale or purchase transaction. As noted previously, the individual appellees were residents of Arkansas at the time of the purchases at issue, and the Delaware corporation had a permanent presence in this State. A purchase out of state of an airplane, motor vehicle, or mobile home for use in Arkansas would qualify for the exemption if the particular item had been subjected to an Arkansas sales or use tax with respect to a prior sale or, in the case of a motor vehicle or mobile home, the item had been previously registered with the Arkansas Department of Motor Vehicles. In this sense, the Arkansas exemption scheme did insure "equal treatment for in-state and out-of-state taxpayers similarly situated. . . ." *Halliburton, supra,* 373 U.S. at 70, 83 S.Ct. at 1204, 10 L.Ed.2d at 207. It should be noted that the Supreme Court "has expressly reserved the question whether a State must credit a sales tax paid to another State against its own use tax." *Williams* v. *Vermont,* 472 U.S. 14, 21-22; 105 S.Ct. 2465, 2471; 86 L.Ed.2d 11, 18 (1985). This leaves open the possibility that a State could impose a use tax on an out-of-state purchase for use, storage, or

consumption within the taxing State, even though the very same purchase with respect to which the use tax is imposed was also subjected to a sales tax by the State in which the sale took place. The policy reason for such a possibility seems clear enough. In the use tax situations of the sort involved in this case, the use State may have far greater contacts and provide far more services with respect to the purchased property than the sales State, yet a full credit by the use State of the tax imposed by the sales State would mean that in those cases where the sales tax equals or exceeds the use tax, no use tax would be collected. The Supreme Court has said that "A state, for many purposes, is to be reckoned as a self-contained unit, which may frame its own system of burdens and exemptions without heeding systems elsewhere." *Henneford* v. *Silas Mason Co., supra,* 300 U.S. at 587, 57 S.Ct. at 529, 81 L.Ed. at 821. In the purchases involved herein, in the absence of the Arkansas use tax, no tax would have been paid to Arkansas or any other State with respect to the named appellees' purchases of the airplane, motor vehicle, and mobile home.

Surely, the Arkansas sales and use tax exemption scheme, that essentially required that an Arkansas sales or use tax be imposed with respect to *one* sale or purchase transaction only, and allowed a credit against the use tax for any out-of-state sales tax imposed on the same purchase, imposed much less of a burden than would a perhaps permissible use tax with no credit available for an out-of-state sales tax.

We disagree with the Chancellor's conclusions on this issue, also. Accordingly, we reverse and remand for action consistent with this opinion.

Special Justices STEVEN W. ELLEDGE, DAVID C. SHELTON and BERL S. SMITH, SR., join in this opinion.

DUDLEY, NEWBERN, CORBIN and BROWN, JJ., not participating.