MAURY D. DICKS ET AL *v.* FRED NAFF, MAYOR ET AL

73-81                              500 S.W. 2d 350

Opinion delivered October 22, 1973

*Putman, Davis & Bassett,* for appellants.

*Ledbetter & Associates Ltd.,* by: *Thomas D. Led-better; Smith, Williams, Friday, Eldridge & Clark,* by: *Herschel H. Friday, James A. Buttry,* and *Hermann Ives-ter,* for appellee.

FRANK HOLT, Justice. Appellants attack the constitutionality of Ark. Stat. Ann. § 19-4613 et seq. (Suppl. 1971) (Act 185 of 1965 as amended), which is enabling legislation, and also the constitutionality of an implementing ordinance of the City of Eureka Springs. The city ordinance, as permitted by the enabling act, levied a 1% tax upon the gross receipts or proceeds of motels, hotels and restaurants, owned and operated by appellants, for the purpose of advertising and construcing facilities in the promotion of tourism.

Appellants first contend that the chancellor erred in declaring the enabling act and the implementing ordinance constitutional. It is appellants' position that the enabling act is unreasonable and arbitrary and without just distinction creates a separate class for taxation consisting only of hotels, motels and restaurants to bear the brunt of the total cost of promoting tourism. Further, appellants contend that the classification does not rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly situated shall be treated alike. Therefore, it is asserted that the enabling act as well as the implementing ordinance is violative of the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution.

We first review the controlling rules of statutory construction with reference to the validity of legislation in the area of taxation. In the early case of *Green, et al,* v. *Frazier,* 253 U. S. 233 (1920), the court said:

> When a state legislature acts within the scope of its authority it is responsible to the people, and their right to change the agents to whom they have entrusted the power is ordinarily deemed a sufficient check upon its abuse. When the constituted authority

of the State undertakes to exert the taxing power, and the question of the validity of its action is brought before this court, every presumption in its favor is indulged, and only clear and demonstrated usurpation of power will authorize judicial interference with legislative action.

In *Madden* v. *Kentucky,* 309 U.S. 83 (1940), where a state tax set different rates on bank deposits in the state from those out of state, the United States Supreme Court held that the tax was consistent with due process and equal protection. The court said that "in taxation, even more than in other fields, legislatures posses the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." Again it was emphasized that "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Neither is the state "required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value." *Allied Stores* v. *Bowers,* 358 U.S. 522 (1959). Nor is a legislature required to make meticulous adjustments in an attempt to avoid incidental hardships. *Rapid Transit Corp.* v. *New York,* 303 U.S. 573 (1938). However, as appellants assert, "[T]he State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary." *Allied Stores* v. *Bowers, supra.* The mere fact that a taxation statute is discriminatory in favor of one class is not sufficient to make it arbitrary if that discrimination is based upon a reasonable distinction or if any facts can reasonably be conceived to sustain the act and a difference need not be great. *Tax Commissioners of Indiana* v. *Jackson,* 283 U.S. 527 (1931), and *Allied Stores* v. *Bowers, supra.*

To meet equal protection and due process requirements the legislative classification for the purpose of taxation must rest upon some ground of difference hav-

ing a fair and substantial relation to the object of the legislation so that all persons similarly situated shall be treated alike. *Royster Guano Co. v. Virginia,* 253 U.S. 412 (1920), and *Larey, Comm'r v. Cont. Southern Lines,* 243 Ark. 278, 419 S.W. 2d 610 (1967). A classification is permissible if the differences in the inpact of the act are reasonably related to the purpose of the law. *Jacks v. State,* 219 Ark. 392, 242 S.W. 2d 704 (1951). With respect to the extent of the great freedom of the legislature in exercising its broad and discretionary powers in the area of taxation, it was said in *Carmichael v. Southern Coal Co.,* 301 U.S. 495 (1937):

> A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it.

In *Carmichael* the Alabama Unemployment Compensation Act established a tax scheme levied on employers of eight or more persons for twenty or more weeks in the year. Addressing the numerical requirements, the court said:

> Yet this is the type of distinction which the law is often called upon to make. It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not.

To the same effect is *Potts v. McCastlain, Comm'r,* 240 Ark. 654, 401 S.W. 2d 220 (1966), where we recognized that the mere fact that a classification made by the state is unfair and unequal is not sufficient for invalidating the statute inasmuch as any system of taxation results in many inequalities and perhaps unfairness to particular classes. "This arises more often, not out of the law it-

self, but out of the peculiar conditions under which classes, or individuals, may find themselves in their manner of doing business or location, rather than out of the classification." *U-Drive-Em Corporation* v. *Wiseman*, 189 Ark. 1163. 76 S.W. 2d 960 (1934).

In *Madden* v. *Ky.*, *supra*, it was said "[t]his court fifty years ago concluded that 'the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation' and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a Legislature in formulating sound tax policies."

Thus, the foregoing authority permits the state legislatures to classify certain groups for taxation purposes if a rational basis exists and if a difference is reasonably related to the purpose of the law. A presumption of validity attends such legislation with all doubts being resolved in its favor. The appellants must shoulder the heavy burden of demonstrating that this type legislation can conceivably have no rational basis. In our view the legislature, by its democratic process of conducting public hearings before committees and the free and open discussions by its members in that forum could very well have determined that the greatest income from the toursit dollar would be to the advantage of the members of this particular class. It is common knowledge from time immemorial that the traveler or tourist primarily must first have lodging and food in the area in which he sojourns.

Therefore, in the case at bar we hold, and appellants cite no cases to the contrary in the factual situation, that the enabling act has a rational basis and appellants' classification has a fair and substantial relation to its objective.

The appellants, as prevously indicated, next assert the unconstitutionality of the implementing ordinance on the same basis they attacked the enabling act; i.e., that it has no rational basis and the difference in the effect of the ordinance on other persons similarly situated is not reasonably related to the purpose of the law. It was stipulated that hotels and motels derive 97.5%

of their income from tourist trade and that 90% is derived by restaurants and other eating establishments. In arriving at these percentage figures, it was agreed that seventeen motels and hotels, five restaurants, cafes and cafeterias were considered. This constituted appellants' classification. It was further stipulated that other businesses which were untaxed derived the following percentage of their gross receipts from the tourist trade: campgrounds (1) 100%, gas stations (8) 66%, gift shops (12) 86%, art galleries (3) 88%, liquor stores (3) 53%, grocery stores (2) 50%, toy stores (1) 75%, antique shops (3) 90%, museums (1) 90%, cheese shops (1) 70%. There was evidence adduced, however, that there was actually a total of twenty-five restaurants, thirty-two motels and two campgrounds. It was agreed that the stipulated percentages do not take into account any differences in the amount of gross receipts derived by the various business establishments from tourism. Certainly this is a distinction.

Very quickly we observe that it could reasonably be inferred by the legislative authorities that the gross receipts of those businesses constituting the classification could be greatly in excess of the gross receipts of those untaxed businesses which also benefit from the tourist trade. It is, further, observed that the stipulated percentages of gross receipts derived from tourism are not weighted in terms of the number of businesses in each sub-class.

The two campgrounds are obviously different from hotels and motels inasmuch as the traveler or tourist using them must have with him and furnish most of the necessary facilities for lodging. As to the other untaxed businesses, there also exist differences in "organization, management, and type of business transacted." See *Tax Commissioners of Indiana* v. *Jackson, supra.*

In the case at bar, the ordinance earmarked the funds for expenditure in advertising and providing facilities to promote the tourist industry in that locality. In *New York Rapid Transit Corp.* v. *City of New York, supra,* a tax was placed upon a classification of indus-

tries and earmarked the revenues to relieve unemployment. Even though the funds were earmarked to be spent for that purpose, it was said that the purpose or object of the tax law was to raise revenue. The court said:

> We conclude, therefore, that the provisions of the legislation earmarking the funds collected are not of importance in determining whether or not the classification of the challenged acts is discriminatory.

There it was further said that it is not constitutionally required that a classification for a tax be earmarked or related to the appropriation of the proceeds. *New York Rapid Transit Corp.* v. *City of New York, supra.*

In other words, it was there stated the controlling "object" or purpose "is the revenue to be raised by the acts." We hold that whether the object or purpose of the act and implementing ordinance was merely for raising revenue or its object or purpose was to spend revenue to promote tourism as earmarked by the act, in either event, the appellants have not discharged the heavy burden of proof which they must shoulder to demonstrate the enabling act and implementing ordinance have no rational basis and are not reasonably related to the purposes of the legislation. As previously observed, the legislature could logically and practically envision that appellants, as a classification, would be the beneficiary of not only as great or greater percentage of the tourist dollar (as stipulated) - they also would benefit from much greater gross receipts and profits than the untaxed businesses which also derive a benefit from the sojourner or tourist.

Appellants next contend that the provision in the enabling act providing for a referendum upon the petition of 500 electors is not severable and, further, it is unconstitutional in that it arbitrarily and capriciously discriminates against the smaller cities of the first class (1,500). Eureka Springs is a city of approximately 1,600 population and about 1,233 are qualified electors. At the last general election, a total of 833 voted for a mayor. We hold that the provision requiring 500 petitioners

is severable inasmuch as the enabling act is not dependent upon this provision nor are we of the view that the legislature would have refused to enact the legislation without this number. In fact the legislature, in plain and explicit language in a severability clause, provided that any portion of the act was severable to insure its validity. Furthermore, we do not consider that the appellants are in a position to attack this proviso inasmuch as they did not avail themselves of Amendment 7, §1, of our constitution which permits them to refer any city ordinance to a general election upon the petition of 15% of the local voters of that city. That would have only required approximately 125 petitioners to refer this ordinance to the voters for approval. In oral argument appellees agreed this was a permissible procedure. In the event the petitioners of a city of the first class desire to utilize Amendment 7 as an alternative, that is permissible.

Finally, the appellants, assert the chancellor erred in admitting the testimony of Dr. Charles E. Venus, an expert witness, as to the results of his statewide and local surveys with respect to tourism. A sufficient answer is that, although the chancellor permitted the witness to testify, he specifically found in the decree that appellants' objection to the testimony was sustained and consideration of the testimony was excluded by him in the determination of the issues.

Affirmed.