Daniel L. MEDLOCK, et al. *v.* James C. PLEDGER, et al.
89-89                                              785 S.W.2d 202
Supreme Court of Arkansas
Opinion delivered February 28, 1990
[Rehearing denied April 2, 1990.*]

*Jack, Lyon & Jones, P.A.,* by: *Eugene G. Sayre,* for appellants.

*William E. Keadle,* Revenue Legal Counsel, for appellee James C. Pledger.

*Henry Law Firm,* by: *David P. Morphew* and *Joe Morphew,* for appellees Donald Venhaus, Patricia Tedford, and Pulaski

---

*Dudley and Price, JJ., not participating.

County, Arkansas.

*James N. McCord*, for intervenor/appellee City of Fayetteville, Arkansas.

DAVID NEWBERN, Justice. The question in this case is whether the imposition of a sales tax on cable television service is an unconstitutional, and thus illegal, exaction because the tax does not apply to other mass communications media. We hold that, for a time, the tax was illegal because it was not levied on other, similar services, such as satellite television programming. Now that the tax has been made to apply to all similarly situated businesses, however, its illegality has been cured. We remand the case to the chancellor so that the taxes illegally collected may be refunded to those who paid them.

By Act 188 of 1987 the general assembly added to the services to be subject to the sales tax:

> Cable television services provided to subscribers or users. This shall include all service charges and rental charges whether for basic service or premium channels or other special service, and shall include installation and repair service charges and any other charges having any connection with the providing of cable television services.

By Act 769 of 1989, the language was changed to the following:

> Service of cable television, community antenna television, and any and all other distribution of television, video, or radio services with or without the use of wires provided to subscribers or paying customers or users, including all service charges and rental charges, whether for basic service, premium channels, or other special service, and including installation and repair service charges and any other charges having any connection with the providing of the said services.

Act 769 was signed by the governor on March 21, 1989, and in accordance with its emergency clause, became law on July 1, 1989. The act is now codified as Ark. Code Ann. § 26-52-301(3)(D)(i) (Supp. 1989).

Act 188 was promptly challenged by the appellants, Daniel L. Medlock, Community Communications Co., and the Arkan-

sas Cable Television Association, Inc., on behalf of themselves and all other similarly situated taxpayers. The appellees are James C. Pledger, Commissioner of Revenues, and various state, county, and city officials, Pulaski County, the City of Benton, and all other similarly situated counties and cities. The City of Fayetteville intervened.

As Act 769 had not become law when the chancellor made his ruling, the sole question before him was the constitutionality of Act 188. The taxpayers challenged it as being in violation of their rights of freedom of speech and freedom of the press guaranteed by the First Amendment, their right to equal privileges and immunities guaranteed by U.S. Const., art. 4, § 2, and Ark. Const. art. 2, § 18, and their right to equal protection of the laws guaranteed by the Fourteenth Amendment and Ark. Const. art. 2, § 3. They also claimed protection under 47 U.S.C. § 542 and the Supremacy Clause. All of the counts in the complaint boiled down to a claim of discrimination against the cable television medium, and that is the essence of the arguments on appeal, although they are segmented as was the complaint.

### 1. Public rights of way

In his order ruling against the taxpayers, the chancellor distinguished the cable medium from others on the ground that it required use of a public right of way in addition to the fact that there are no gross proceeds to be taxed in the case of, for example, broadcast television. There was uncontradicted testimony to the effect that a cable television enterprise pays a franchise fee for the use of the right of way. It is true that the use of public rights of way by cable television may subject it to more regulation as has been suggested in some cases. *See City of Los Angeles* v. *Preferred Communications, Inc.*, 476 U.S. 488 (1986); *Central Telecommunications, Inc.* v. *TCI Cablevision, Inc.*, 800 F.2d 714 (8th Cir. 1986); *Omega Satellite Products* v. *City of Indianapolis*, 694 F.2d 119 (7th Cir. 1982); *Community Communications* v. *City of Boulder*, 660 F.2d 1370 (10th Cir. 1981). However, those cases involve regulation related to access to or use of the rights of way rather than a tax which has no relationship to the acquisition of the privilege of using public property. We thus find the fact that cable television uses public property and must obtain a franchise to do so should not control the result in this case.

## 2. *The First Amendment*

We need not indulge in a long explanation of the history of cable television and the cases which have gradually recognized the entitlement of such enterprises to First Amendment protection. A good discussion of it is found in *Quincy Cable TV, Inc.* v. *F.C.C.*, 768 F.2d 1434 (D.C. Cir. 1985).

The Supreme Court has left no doubt about the matter. In *City of Los Angeles* v. *Preferred Communications, Inc., supra*, it was held that the complaint of a cable television company alleging violation of the company's rights guaranteed by the First Amendment should not have been dismissed for failure to state a claim upon which relief could be granted. The court made it clear that the complaint implicated the First Amendment and facts should be developed to determine how to balance the First Amendment protection to which a cable television company was entitled against the city's right to regulate the company's use of public property.

## 3. *Discrimination*

Entitlement to protection under the First Amendment does not mean entitlement to absolute freedom from regulation by the government. *U.S.* v. *O'Brien*, 391 U.S. 367 (1968). If a tax is to be applied to an enterprise entitled to First Amendment protection, it must be a general tax and must not be a form of censorship. In *Grosjean* v. *American Press Co.*, 297 U.S. 233 (1936), Louisiana was held to have violated the First Amendment by imposing a tax on newspapers circulating more than 20,000. The court recognized that the press may be subjected to taxation but not if the tax is discriminatory and functions as a censor of some newspapers but not others.

In *Minneapolis Star & Tribune Co.* v. *Minnesota Comm'r of Revenue*, 460 U.S. 575 (1983), it was held that a Minnesota use tax on ink and paper purchases over $100,000 was invalid because its impact was on a few newspapers and one in particular. Unlike the *Grosjean* case, there was no direct implication of censorship, but the tax was found to discriminate among newspapers and thus to be invalid. The Supreme Court again recognized, however, that the press is subject to a general, nondiscriminatory tax.

In *Arkansas Writers' Project* v. *Ragland*, 481 U.S. 221 (1987), the Supreme Court held that a tax which was applied to some, but not other, magazines sold in Arkansas was in violation of the First Amendment.

In none of the cases we have discussed above, and in none of the other cases cited to us, do we find the Supreme Court holding that, for example, the failure to tax newspapers in the same manner as radio broadcasts violates the First Amendment. Each of the cases involved discrimination among competing mass communicators, each of whom was entitled to First Amendment protection. The taxpayers argue here that cable television is entitled to exemption from the sales tax because newspaper sales are not taxed and subscription magazine sales aren't taxed. They would like us to issue a ruling which would invalidate not only Act 188 but, in effect, Act 769 as well. We decline to do so. As noted above, Act 769 was not before the court in this case, and we are unwilling to hold that all mass communications media must be taxed in the same way. It would be impossible to impose a tax which would have the same effect on broadcast television, the delivery of which produces no direct "gross proceeds," and cable television. We must, however, hold that a tax which discriminates between mass communicators delivering substantially the same service runs afoul of the First Amendment and the cases which prohibit discriminatory taxation among the purveyors of a particular medium.

Act 188 levied a tax on cable television enterprises but did not tax the proceeds resulting from the "unscrambling" of satellite signals. The similarity of the services is demonstrated in the testimony of Paul Gardner, Jr., president of the Arkansas Cable Television Association. He testified that his company offered both cable service and decoders for "unscrambling" satellite television broadcasts which a viewer using a satellite dish could not otherwise receive. He testified that his company charged the same to a cable viewer for the premium HBO channel, for example, as it charged a satellite viewer. Act 188 thus imposed a tax which cannot pass First Amendment muster, and we must remand this case to the chancellor for orders

consistent with this opinion.

Reversed and remanded.

DUDLEY, J., not participating.