Daniel L. MEDLOCK, et al. *v.* Timothy J. LEATHERS,
Commissioner of Revenues, et al.
City of Fayetteville, Arkansas

89-89 842 S.W.2d 428

Supreme Court of Arkansas
Opinion delivered November 23, 1992
[Rehearing denied January 11, 1993.*]

*Dudley, J., not participating.

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellant.

*Larry D. Vaught*, for appellees Patricia Tedford and Pulaski County.

*William E. Keadle*, for appellee Commissioner of Revenues.

*James M. McCord*, for intervenor City of Fayetteville.

KENNETH R. MOURTON, Special Justice. This case involves the issue whether Arkansas' imposition of a gross receipts tax violates the Equal Protection Clause of the Fourteenth Amendment. We hold that no such violation occurred even though the tax applied to cable television operators and subscribers while remaining silent as to satellite subscribers and operators. The chancellor's order denying and dismissing the equal protection claim is affirmed. A finding of the statute's constitutional validity allows us to dismiss the Supremacy Clause issue.

On March 21, 1987, the Arkansas General Assembly adopted Act 188 of 1987 [Act 188], effective July 1, 1987, amending the previous statute concerning the Arkansas gross receipts tax. Act 188 added cable television to the list of services that had state and local sales taxes imposed on them. It did not, however, apply to other forms of mass media, particularly scrambled satellite television services. The appellants filed a class action on May 28, 1987, requesting that Act 188 be declared an illegal exaction discriminating among mass media.

Appellants are Daniel L. Medlock, a cable subscriber, Community Communications Company, the Arkansas Cable Television Association, Inc. on behalf of themselves and all other similarly situated taxpayers subjected to the television services sales tax. The appellees are James C. Pledger, the Commissioner of Revenues, Timothy J. Leathers and various state, county, and city officials, Pulaski County, the City of Benton, and all similarly situated counties and cities. The City of Fayetteville intervened. Appellants claimed a variety of their constitutional rights had been violated: freedom of speech; freedom of the press; equal privileges and immunities; freedom of equal protection of the laws and protection under the Supremacy Clause. These allegations centered primarily on the claim of discrimination against cable television under the First Amendment. This court origi-

nally held that the First Amendment required similar taxation of cable and satellite providers. The U.S. Supreme Court found that imposing the fee upon cable alone did not impede cable's free speech ability to act as a check on government nor did it target a small group of speakers or discriminate on content and was therefore constitutionally permissible. *Leathers v. Medlock*, ___ U.S. ___, 111 S. Ct. 1438 (1991). We originally found that cable and satellite businesses were similarly situated because they ended in substantially the same result — video programming. *Medlock v. Pledger*, 301 Ark. 483, 785 S.W.2d 202 (1990), *aff'd in part, rev'd in part, Leathers v. Medlock*, ___ U.S. ___, 111 S. Ct. 1438 (1991). The case has been remanded to us for consideration of the issue that we did not originally reach: whether the Equal Protection Clause required similar taxation of cable and satellite providers. We allowed the parties to address the Supremacy Clause issue during this remand.

The chancery court[1] found in favor of appellees and determined Act 188 was not an illegal exaction. After the chancellor's decision,[2] Act 188 was amended by Act 769 of 1989, effective July 1, 1989, to include "[s]ervice of cable television, community antenna television, and any and all other distribution of television, video, or radio services . . . ." Ark. Code Ann. § 26-52-301(3)(D)(i) (Repl. 1992).

## I.

■ The Fourteenth Amendment of the U.S. Constitution provides, "No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. In previous equal protection cases this court has determined that tax legislation often survives the rational basis test. *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). The court stated, "[u]nder the rationality standard of review, we must presume the legislation is constitutional, i.e. that it is rationally related to achieving a legitimate governmental objective." *Id.* at

---

[1] The Honorable Lee A. Munson, Chancellor, First Division, Pulaski County Chancery Court presided.

[2] Chancellor Munson entered an Opinion on March 10, 1989, and an Order and Judgment on March 13, 1989.

213, 655 S.W.2d at 463. Awareness of local needs and usages of funds helps the legislature form equitable distributions of tax burdens. Such knowledge and familiarity with community conditions have traditionally allowed courts to tolerate legislatively created classifications. *See generally Regan* v. *Taxation with Representation of Washington,* 461 U.S. 540 (1983) (stating that legislatures have extremely broad latitude in creating classifications and distinctions in tax statutes); *New York Rapid Transit Corp.* v. *City of New York,* 303 U.S. 573 (1938) (holding that state legislatures may identify or designate a particular class to be the object of a tax so long as the state does not violate the class' rights to equal protection of the laws); *Louisville Gas & Elec. Co.* v. *Coleman,* 277 U.S. 32 (1928) (explaining that flexibility is granted to states to classify for taxation purposes); *Citizens' Tel. Co.* v. *Fuller,* 229 U.S. 322, *aff'd,* 229 U.S. 335 (1913) (reviewing numerous decisions where state legislatures were allowed to discriminate among different persons in taxation statutes).

"Inherent in the power to tax is the power to discriminate in taxation." *Leathers,* ___ U.S. at ___, 111 S. Ct. at 1446. Courts should defer to local legislative determinations as to the desirability of imposing discriminatory measures. *City of New Orleans* v. *Dukes,* 427 U.S. 297 (1976). A court will not strike down a classification merely because it is underinclusive. The law must be "purely arbitrary" in its classification; thus the only classification not allowed in taxing is invidious discrimination. *Id.* If a taxation statute discriminates in favor of one class it is not determined to be arbitrary so long as the discrimination is based upon a reasonable distinction, and if there is any hypothesized set of facts to uphold a rational basis. *Streight* v. *Ragland,* 280 Ark. 206, 655 S.W.2d 459 (1983). Appellants argue that hypothesizing a rational basis, as in *Streight,* should be beyond the power of this court. We view hypothesizing a rational basis the same as conceiving a rational basis; a practice that is available to the courts without question. We point to the language of *Streight* and conclude that any rational basis for a taxation statute may be developed at any time.

> In any event, the judiciary is allowed to hypothesize and . . . reach a conceivable basis for the exemp-

tions which [it] conclude[s] are rational, reasonably distinctive and not arbitrary. It causes us to defer to legislative purpose because there is a rational basis for the tax . . . .

. . . .

Before it is said that such hypothesizing is far afield, we re-emphasize that our role is not to discover the *actual basis* for the legislation. Our task is merely to consider if *any* rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government and void of any hint of deliberate and lawful purpose.

*Streight*, 280 Ark. at 214-15, 655 S.W.2d at 464.

■■ This court will give great deference to the General Assembly in the legislation of taxation where the clear intent of the statute is to raise revenue and not to discriminate among similarly situated individuals. In a similar equal protection case involving the media, Justice Rehnquist stated, "[w]e have shown the greatest deference to state legislatures in devising their taxing schemes." *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 599 (1983) (Rehnquist, J., dissenting). Even without such deference Act 188 will survive the rational basis test when we apply the intervenor's argument. Arkansas, primarily a rural state, may classify between satellite and cable because the state needs satellite television transmission in those geographic areas where cable services are not feasible. We acknowledge other conceivable rational bases for the arguments that were addressed at oral argument but we are not compelled to discuss them here. One conceivable rational basis is enough to pass the test.

■ In searching for any rational basis, we ask whether the created classification has a conceivable reasonable relationship to the governmental action. *Madden v. Kentucky*, 309 U.S. 83 (1940). Under the rational basis test, a reasonable purpose of the legislation need not be determined at the time of passage of the statute. Because broad discretion to classify has long been recognized in taxation, *New York Rapid Transit Corp. v. City of New York*, 303 U.S. 573 (1938), "the Fourteenth Amendment

was not intended to compel the State[s] to adopt an iron rule of equal taxation." *Bell's Gap R.R. Co.* v. *Pennsylvania*, 134 U.S. 232, 237 (1890).

■ Because of this presumption of a tax's constitutionality, the party challenging the tax has the burden of showing that no conceivable basis could ever support it. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U.S. 61 (1911); *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). We originally determined cable and satellite to be "the purveyors of a particular medium." *Medlock* v. *Pledger*, 301 Ark. 483, 487, 785 S.W.2d 202, 204 (1990). That "particular medium," video programming, is the end result of both cable and satellite. Because of the characteristics of television programming the process can be divided into several classes based on transmission techniques. Cable, both basic and premium, depends upon a sophisticated transmission system requiring substantial investments by cable companies. Satellite, however, merely requires installing a satellite dish by the user, as does an antenna user installing an antenna. The sophisticated transmission system is not needed. Descrambled satellite is only different from satellite in that it requires special programming at the programming location which is usually out of state. Even though the end result of the video programming is similar, satellite and cable providers transmit their signals to viewers in different ways; therefore, a distinguishable classification at the initial stage of programming exists.

## II.

Counsel for appellants, in their briefs and at oral argument, displayed a misconception of the purpose and strength of Special Justices. Although we trust this misconception is not widespread, we are compelled to address it in hopes of avoiding confusion in the future. Special Justices are an intricate and necessary part of our judicial system and shall continue to enjoy the distinguished positions they have traditionally possessed throughout our history. To say that any law created by Special Justices is some type of "special law" which does not need the public's compliance is a fallacy.

This court has numerous opinions authored by Special Justices. Due to the doctrine of *stare decisis* these cases have been upheld and applied to similar fact patterns. *Bosworth* v. *Pledger*,

305 Ark. 598, 810 S.W.2d 918, *cert. denied*, 112 S. Ct. 617 (1991) involved four Special Justices while the Court in *Streight*, 280 Ark. 206, 655 S.W.2d 459, was comprised entirely of Special Justices. In *Streight* the issue involved retirement income tax exemptions of government employees. The Justices all recused themselves because the outcome of that case affected their financial interests. Had the safety valve of Special Justices not been present, the case may well have never been litigated. *Bosworth* involved equal protection arguments on a state sales tax on telephone communication services. The decision, although written by a Special Justice, was a unanimous decision of the court. Both cases have been cited by this court and upheld even in situations where no Special Justices served.

 When justices of this court find it necessary to disqualify themselves from participating in a case it is imperative that there be some safety valve that will allow the parties to continue before the court; Special Justices serve this purpose. To argue that the Special Justices are not true justices is absurd and only serves to create a myth that laws can be distinguished on varying levels of importance. For these reasons we conclude that any opinion of this court involving one or more Special Justices shall bear the same precedential value as any other.

## III.

This court does not intend to favor or advocate particular lawyering tactics. We are obliged, however, to note that when counselors file briefs and appear before the court certain expectations exist. A party's argument is judged through the combination of briefs and oral arguments. There is a fundamental unfairness in not adequately and fully presenting one's position in the brief and waiting until oral argument to clarify it. Litigants are entitled to know all arguments so that they may prepare adequate responses. Requiring presentation of arguments in briefs enhances quicker resolution and more complete discussion of the issues.

Because both parties conceded the appropriate standard of review, the essential remaining issue in this case was whether the facts fit within the rational basis test. Appellees, therefore, should have submitted a more concise brief presenting conceivable bases for the statute. It is not the job of the court, but rather of attorneys

to present arguments to bolster their positions. Counsel representing appellees did not advance any possible rational bases and initially replied ambiguously when questioned by the bench at oral argument. Upon further questioning, however, he provided his examples of rational bases for Act 188's different treatment of cable and satellite. He also stated that it was a "hearing tactic" to not disclose the purpose or basis in the brief but to disclose at oral argument. We are concerned with such techniques because we often make determinations based on the disclosure in briefs and argument. These actions do not afford the opposing party any fair opportunity to respond.

Ark. Sup. Ct. R. 18(j) provides that "[i]f a case outside the brief is to be cited, the citation must be furnished opposing counsel in advance as soon as possible." This requirement and the other guidelines of Rule 18 are for the purpose of having arguments where all parties are fully prepared. Because we will not permit counsel, absent necessity or special permission, to read from books, counsel should make all responsible efforts to disclose their basic positions prior to arguments. Although the outcome of this case was not substantially affected by the actions of counsel, we find it appropriate that counsel should fully disclose and develop their respective positions in the briefs.[3]

## IV.

Appellants argue that Act 188 conflicts with and is preempted by the Federal Cable Communications Policy Act of 1984 [Cable Act], codified as 47 U.S.C. §§ 521 to 559, 611 (1988 & Supp. 1990). We find this issue is without merit. Appellants argue that Act 188, by taxing cable without taxing satellite unduly discriminated against cable and thus violated the federal cable act. Appellants also state that Congress was trying to create a national policy that would deal with the problems that arise when state and local governments discriminatorily impose general taxes. There is, however, no actual conflict between the Cable Act and Act 188. When Congress defined "franchise fee" in the Cable Act, it recognized that general taxes could be imposed on

---

[3] Counselors will continue to have flexibility to elaborate arguments, explain positions, or answer questions even after following this procedure.

cable. 47 U.S.C. § 542(g)(2)(A) (1988). Because we have determined that Act 188 was not unduly discriminatory, the Supremacy Clause issue is without merit.

Article VI, Clause 2 provides, "This Constitution, and the laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the . . . laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. As Section 542(g)(2)(A) provides, "the term 'franchise fee' does not include . . . any tax . . . of general applicability" and may be imposed on cable services so long as it is not "unduly discriminatory."

In the 1941 case of *Hines* v. *Davidowitz*, the U.S. Supreme Court warned about preemption cases; "[b]ut none of these expressions provides an infallible constitutional test or an exclusive constitutional yardstick. In the final analysis, there can be no one crystal clear distinctly marked formula." *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941). In *Goldstein* v. *California*, 412 U.S. 546 (1973) the Court, in deciding whether a state law would be preempted, asked whether the state law stood as an obstacle to the accomplishment of Congress' objectives or purposes. This test was expanded in *Capital Cities Cable, Inc.* v. *Crisp*, 467 U.S. 691 (1984), where the Court based preemption on four factors: whether Congress expressed a clear intent to preempt state law; whether Congress occupies the field so as to leave no room for the states to supplement; whether compliance with both the state and federal laws is impossible; and whether the state law stands as an obstacle to Congress' objective or purpose. *Id.*

When Congress passed the Cable Act, it intended to create a national policy governing cable communications while at the same time providing guidelines for state and local authority to regulate cable systems. 47 U.S.C. § 521(1), (3) (1988). Once Congress left the door open for state and local governments to regulate, it did not intend to preempt any legitimate state legislation; nor did it totally occupy the field of cable communications. It is possible to comply with both state and federal laws, likewise, the state statute does not stand as an obstacle to Congress' purpose. Act 188 fits within the area of discretion left

by the Cable Act to allow state and local communities to regulate and tax cable services as they choose. We therefore dismiss the preemption issue.

Affirmed.

Dudley, J. not participating.