The Honorable James G. Dietz State Representative 4221 Richards North Little Rock, Arkansas 72117
Dear Representative Dietz:
This letter is a response to your request for an opinion regarding the method of taxing car sales in Arkansas. Pursuant to A.C.A. §26-52-510(b), a vehicle sale which involves the taking of another vehicle in trade is taxed upon the basis of the difference between the total consideration for the vehicle sold and the credit given for the traded vehicle. In contrast, a vehicle sale which does not involve the taking of another vehicle in trade is taxed upon the basis of the total consideration for the vehicle sold.
You have presented a question as to the constitutionality of this difference in the method of taxing the two types of sales. Your question, as restated, is as follows:
 Is it constitutional for the state to tax automobile sales that do not involve a trade-in credit at a higher rate than that at which it taxes automobile sales that do involve a trade-in credit?
It is my opinion that the taxing methodology about which you have inquired is constitutional.
The constitutional principle that is implicated by your question is the doctrine of equal protection, which arises out of theFourteenth Amendment of the United States Constitution. The equal protection doctrine prohibits certain types of classifications, i.e., the treating of different classes disparately; however, classifications in and of themselves do not violate the equal protection doctrine. Therefore, in order to establish an equal protection violation, it is not enough to show merely a classification; it is necessary to show that the classification is arbitrary, i.e., that it has no rational basis. Medlockv. Leathers, 311 Ark. 175, 842 S.W.2d 428 (1992), reh. denied, 1993. Moreover, in reviewing the constitutionality of a taxation scheme, the courts must not only presume the constitutionality of the challenged scheme, but they must also uphold the scheme without requiring a showing of an actual rational basis, if any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Id. It is pertinent to note that in the context of an equal protection challenge to a taxing methodology, the burden is on the challenger to establish the absence of any rational basis — hypothetical or otherwise — for the challenged methodology. Howard v. City of Ft. Smith, 311 Ark. 505, 845 S.W.2d 497
(1993).
The Arkansas Supreme Court has had numerous opportunities to address equal protection challenges to various taxing schemes where the challenges were based on the grounds that different entities were taxed disparately. See, e.g., Medlock v. Leathers, supra; Howard v. City ofFt. Smith, supra; Summers Chevrolet v. Yell County, 310 Ark. 1,832 Ark. 486 (1992); Bosworth v. Pledger, 305 Ark. 598,810 S.W.2d 918 (1991); Medlock v. Pledger, 301 Ark. 483,785 S.W.2d 202 (1990); Streight v. Ragland, 280 Ark. 206,655 S.W.2d 459 (1983); Dicks v. Naff, 255 Ark. 357,500 S.W.2d 350 (1973); Larey v. Cont. Southern Lines, 243 Ark. 278,419 S.W.2d 610 (1967); Hardin v. Vestal, 204 Ark. 492,162 S.W.2d 923 (1942); McCarroll v. Gregory-Robinson-Speas, 198 Ark. 235,129 S.W.2d 254 (1939).
The court has stricken down (on the basis of the equal protection doctrine)[1] only those taxing methodologies for which no rational basis — either actual or hypothetical — could be established. For example, McCarroll, supra, involved a challenge to a taxation methodology under which an income tax was imposed upon domestic corporations on the basis of income derived from operations both inside and outside the state. Foreign corporations were taxed only on the basis of income derived from operations inside the state. The court found this classification to be a violation of the equal protection doctrine.
Another case in which the court struck down a taxation scheme on equal protection grounds was Arkansas Commerce Comm. v. Ark. Ozarks Rwy. Co.,235 Ark. 89, 357 S.W.2d 295 (1962). The taxation under consideration there was a "removal" tax levied on railroad companies who sought to abandon their lines in Arkansas. The stated purpose of the tax was to obtain the funds that would be necessary to maintain the highways in light of the added burden that they would bear as a result of the removal of railroad lines. The act that created the tax exempted companies who operated more than 100 miles of track and those who operated less than 50 miles of track. It appeared to be aimed solely at one company's operations. The court found that this discrimination bore no rational relationship to the stated purpose of the tax, and thus was in violation of the equal protection doctrine.
The court sustained an equal protection challenge in Rebsamen Motor Co.v. Phillips, 226 Ark. 146, 289 S.W.2d 140 (1956), where the act being challenged imposed a license tax upon franchised car dealers, but not upon non-franchised dealers. The court found this classification to be arbitrary and in contravention of the Fourteenth Amendment. In so holding, the court stated:
 It is one thing to exert the power of taxation so as to meet the expenses of government, and at the same time, indirectly, to build up or protect particular interests or industries. It is quite a different thing for the State, under its general police power, to enter the domain of trade or commerce, and discriminate against some by declaring that particular classes within its jurisdiction shall be exempt from the operation of a general statute making it criminal to do certain things connected with domestic trade or commerce. Such a statute is not a legitimate exertion of the power of classification, rests upon no reasonable basis, is purely arbitrary, and plainly denies the equal protection of the laws to those against whom it discriminates.
Rebsamen Motor, 226 Ark. at 154, quoting Connelly v. Union Sewer Pipe,184 U.S. 540.
In contrast to its holdings in McCarroll, Arkansas Commerce Comm., andRebsamen Motor, the Arkansas Supreme Court has upheld taxing methods that involved a variety of classifications, including the following:
 * A disparate treatment of cable television operators and subscribers on the one hand, and satellite operators and subscribers on the other (Medlock v. Leathers, supra);
 * A disparate treatment of taxpayers, according to the date on which they purchased their occupation licenses (Howard v. City of Ft. Smith, supra);
 * A disparate treatment of property owners, as to property value assessments (Summers Chevrolet v. Yell County, supra);
 * A disparate treatment of subscribers to regular long distance service and subscribers to WATS service (Bosworth v. Pledger, supra);
 * A disparate treatment of government pensioners and private retired taxpayers, as to income tax exemptions on retirement income (Streight v. Ragland, supra);
 * A disparate treatment of hotels, motels, and restaurants on the one hand, and all other taxpayers on the other, as to a special tax for tourism purposes (Dicks v. Naff, supra); and
 * A disparate treatment of florist and nursery products on the one hand, and farm products and live stock on the other, for purposes of a privilege tax (Hardin v. Vestal, supra).
In each of the cited cases, the court's decision to uphold the taxing methodology under consideration (including its classification) was based upon its finding that the classification bore a rational relationship to the stated purpose of the tax.
Considering Arkansas' method of taxing car sales in light of the guidelines set forth in the above-cited precedents, I find that a rational basis is conceivable for the disparate treatment that characterizes Arkansas' method. In my opinion, it is reasonable to believe that the legislature could have viewed the trade-in transaction separately from the purchase transaction. Under this view, the trade-in transaction could be seen as having the nature of a "sale for resale" from the customer to the dealer, under the provisions of A.C.A. §26-52-401(12)(A), thus being exempt from taxation at the time of trade, with the attendant presumption that the state will receive its tax revenue on the trade-in automobile at the time of resale. Viewing the trade-in transaction as a separate purchase, it might even be argued that no classification actually exists, given the fact that the tax paid on the remaining purchase transaction would be paid on the total consideration for that separate purchase, just as is done with a purchase without trade-in.
In light of this possible basis for the difference in methods of taxing car sales, I must conclude that such taxation methodology is constitutional.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] The court has stricken down taxing schemes on other grounds. See,e.g., Medlock v. Pledger, 301 Ark. 483, 785 S.W.2d 202 (1990) (tax stricken on First Amendment grounds); Larey v. Cont. Southern Lines,243 Ark. 278, 419 S.W.2d 610 (1967) (tax stricken on interstate commerce grounds).