Argued and submitted January 22, reversed and remanded for entry of judgment
in favor of City of Eugene October 31, 2001

# TCI CABLEVISION OF OREGON, INC.,
## and TCI Network Solutions, Inc.,
*Respondents,*

*v.*

# CITY OF EUGENE,
## an Oregon municipal corporation,
*Appellant.*

## 16-97-12233; A105860

38 P3d 269

William F. Gary argued the cause for appellant. With him on the briefs were Linda J. Kessel and Harrang Long Gary Rudnick P.C.

Duane A. Bosworth and William A. Davis argued the cause for respondents. With them on the brief were Davis Wright Tremaine, LLP, and Tara Corvo and Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., Washington, D.C.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

TCI Cablevision of Oregon, Inc. (TCI), and TCI Network Solutions, Inc. (TCINS), initiated this action for declaratory and injunctive relief, challenging the validity of the City of Eugene's (city) telecommunications ordinance. They contend that the ordinance is preempted by state and federal law. The trial court agreed and entered summary judgment in favor of TCI and TCINS. The city appeals, and we reverse and remand.

The facts pertaining to the enactment of the city's telecommunications ordinance are set forth in our opinion in *AT&T Communications v. City of Eugene*, 177 Or App 379, 381-84, 35 P3d 1029 (2001). In brief, the ordinance requires all who intend to provide telecommunications services within the city to complete a registration application and pay a registration fee, including an annual fee equal to two percent of annual gross revenues from telecommunications activities within the city. Eugene Code (EC) § 3.405(1). It also requires providers who use city rights-of-way to demonstrate their legal, financial, and technical capabilities and to pay a license fee equal to seven percent of annual gross revenues from telecommunications activities within the city. EC § 3.410.

TCI provides cable service in the city. It currently pays the city for the use of city rights-of-way through a cable franchise agreement. The current franchise fee is five percent of gross revenues from business activities in the city. TCINS is a TCI affiliate that leases capacity from TCI to provide a private line between Autzen Stadium and Chambers Media Corp.

The city concluded that TCI and TCINS are engaged in telecommunications activities within the city and therefore demanded that they pay the registration fee required under the telecommunications ordinance. TCI and TCINS then initiated this action, challenging the validity of the registration fee. The city apparently has not sought to enforce the license fee requirement against TCI or TCINS, and, as we understand it, TCI and TCINS do not challenge the validity of that portion of the telecommunications ordinance.

TCI and TCINS contend that the registration fee requirement is preempted by:

(1) ORS 221.515, which authorizes local governments to impose a tax of seven percent of gross revenues on telecommunications carriers who use local rights-of-way;

(2) ORS chapter 759, which authorizes the Public Utility Commission (PUC) to regulate telecommunications services in the state; and

(3) 47 USC § 253(a) (Supp 2001), which prohibits state or local government regulations that "may prohibit or have the effect of prohibiting the ability of any entity to provide * * * telecommunications service."

In addition, TCI argues that the registration fee requirement is preempted by 47 USC § 542(b) (Supp 2001), which limits franchise fees paid by cable operators to five percent of gross revenues each year.

TCI and TCINS moved for summary judgment. So did the city. The trial court granted the motion of TCI and TCINS and denied the city's motion. On appeal, the city argues that the trial court erred, because its ordinance is preempted by none of the state or federal statutes on which TCI and TCINS rely.

■ In *AT&T Communications*, we concluded that the city's telecommunications ordinance—including the registration fee requirement—is not preempted by ORS 221.515, ORS chapter 759, or 47 USC § 253(a). 177 Or App at 379, 387-91, 394-98, 401-12. In this case, TCI raises only one challenge that has not been previously addressed, namely, that the registration fee requirement violates section 542(b) of the Federal Cable Communications Policy Act of 1984 (Act), 47 USC § 542(b) (Supp 2001), which provides:

"For any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed 5 percent of such cable operator's gross revenues derived in such period from the operation of the cable system to provide cable services."

The Act defines "franchise fee" as

> "any tax, fee, or assessment of any kind imposed by a franchising authority or other governmental entity on a cable operator * * * solely because of their status as such * * *."

47 USC § 542(g)(1) (1991). This does not include

> "any tax * * * of general applicability (including any such tax, fee, or assessment imposed on both utilities and cable operators or their services but not including a tax * * * which is unduly discriminatory against cable operators or cable subscribers)."

47 USC § 542(g)(2)(A) (1991). It also does not include charges that are "incidental to the awarding or enforcing of the franchise." 47 USC § 542(g)(2)(D) (1991).

TCI argues that the city's registration fee of two percent, when added to the five percent that it already pays under its cable franchise agreement, exceeds the five-percent cap imposed by the federal cable statute. The city contends that the registration fee is subject to the exception for taxes of general applicability. We agree with the city.

■ To determine the meaning of the federal cable statute, we examine its text and structure and, if necessary, its enactment history. *Department of Revenue of Ore. v. ACF Industries, Inc.*, 510 US 332, 339-46, 114 S Ct 843, 127 L Ed 2d 165 (1994); *see also Northwest Airlines, Inc. v. Dept. of Rev.*, 325 Or 530, 538, 943 P2d 175 (1997) (applying federal law).

Section 542(g)(2)(A) exempts from the five-percent cap on cable franchise fees any tax of "general applicability." The statute does not define precisely what is meant by a tax of "general applicability." But it does specify that it includes "any such tax, fee, or assessment imposed on both utilities and cable operators," as long as such a tax is not "unduly discriminatory" against cable operators or subscribers.

The legislative history confirms what the language of the statute suggests. The House Report, for example, explains that taxes of "general applicability

"would include such payments as a general sales tax, an entertainment tax imposed on other entertainment businesses as well as the cable operator, and utility taxes or utility user taxes which, while they may differentiate the rates charged to different types of utilities, do not unduly discriminate against the cable operator so as to effectively constitute a tax directed at the cable system."

H Rep No 98-934, 98th Cong, 2d Sess, *reprinted in* 1984 US Code Cong & Ad New, 4655, 4701.

Consistently with the text of the statute and its enactment history, courts have upheld a variety of taxes imposed on cable operators as taxes of "general applicability" within the meaning of 47 USC § 542(g)(2)(A). *See, e.g., Medlock v. Leathers*, 311 Ark 175, 183-85, 842 SW2d 428, 433-34 (Ark 1992), *cert den* 508 US 960, 124 L Ed 2d 680, 113 S Ct 2929 (1993) (gross receipts tax); *Communicat. & Cable of Chicago v. Chicago*, 282 Ill App 3d 1038, 1050-52, 668 NE2d 1032, 1040-41 (Ill App 1996) (city amusement tax); *UACC Midwest v. Ind. Dept. of State Rev.*, 667 NE2d 232, 237 (Ind Tax 1996) (gross sales tax).

In this case, the city imposes a registration fee on all providers of telecommunications services, including telecommunications utilities, competitive telecommunications service providers, and cable operators. The ordinance does not target cable operators. It applies uniformly to all telecommunications providers.

■■ TCI insists that the city's registration fee is not a tax of general applicability within the meaning of 47 USC § 542(g)(2), because the universe of affected businesses is simply too small. TCI, however, ignores the language of the statute, which expressly includes taxes on "both utilities and cable operators or their services." Moreover, the company fails to explain why the number of businesses subject to the tax is, by itself, determinative of its lawfulness. To the contrary, as the court explained in *Sacramento Cable Television v. Sacramento*, 243 Cal App 3d 232, 244, 286 Cal Rptr 470, 477-78 (1991):

"[W]e are aware of no breadth requirement for a tax of general applicability. It is enough that the tax is not a special

assessment and does not discriminate against a particular taxpayer or business."

TCI contends that the city's registration fee nevertheless is invalid because it is unduly discriminatory against cable operators. According to TCI, the city unfairly requires it to pay the registration fee, while it does not require a fee of satellite and broadcast television providers. The city asserts that the same argument has been rejected by other courts on the ground that there is a reasonable distinction between those providers, namely, the difference in technology involved in transmitting signals to customers and viewers and invites us to reject TCI's argument on that ground. We accept the city's invitation.

To begin with, the statute does not prohibit all discrimination, only "undue" discrimination that "effectively constitute[s] a tax directed at the cable system." Accordingly, courts have upheld taxes of general applicability against discrimination challenges as long as there is a rational basis for applying the tax to some businesses—including cable operators—and not others. Thus, for example, in *Medlock*, the Supreme Court of Arkansas upheld a gross receipts tax that applied to cable operators but not to broadcast television stations. According to the court, differences in technology justified the distinction: Cable operators typically depend on sophisticated transmission systems, which, presumably, involve the use of city property, while broadcast transmission requires only a satellite dish. *Medlock,* 311 Ark at 180, 842 SW2d at 431. *See also UACC Midwest,* 667 NE2d at 238-39 (upholding income tax that applied to cable operators but not to broadcast television companies).

In this case, the city's telecommunications ordinance applies to all who provide "telecommunications service." The term is defined to exclude over-the-air radio or television broadcasting from facilities that are licensed by the Federal Communications Commission. EC § 3.005. Although cable operators may transmit programming, much like television or radio broadcasters; they also may offer their facilities for interactive telecommunications use, in particular, Internet access. We conclude that there is at least a rational explanation for including cable transmissions within the definition of

"telecommunications services," while excluding radio and television broadcasting.

Reversed and remanded for entry of judgment in favor of City of Eugene.