The Honorable Donna Hutchinson State Representative 24 Rillington Drive Bella Vista, AR 72714-3204
Dear Representative Hutchinson:
I am writing in response to your request for my opinion "on whether House Bill 1037 of 2007 is constitutionally suspect because of possible gender discrimination." You state:
 HB 1037 will codify that the Department of Correction (DOC) must use either soft shackles or simply no restraints during the childbirth and recovery process. However, we do not mandate that the DOC use the same discretion when male prisoners undergo and recover from their surgeries or treatment.
 RESPONSE
In my opinion, the answer to your question is "no," HB 1037 is not constitutionally suspect.
The bill would add a subchapter to the Arkansas Code entitled "Standard of Care for Pregnant Inmates Act." It would require the use of shackles that are of a "soft restraint" for inmates who are either pregnant or recovering from childbirth, assuming that restraints are determined to be "reasonably necessary for the safety and security of . . . the inmate, the medical staff and the public." Your question regarding the bill's constitutionality reflects a concern that it may be violative of equal protection rights. The principle that citizens are entitled to equal protection *Page 2 
under the laws is expressed in both the federal and the state constitutions. U.S. Const. amend. 14, § 2 ("nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws"); Ark. Const. art. 2, § 3 ("The equality of all persons before the law is recognized, and shall ever remain inviolate. . . .").[1]
The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. Classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class, such as a particular racial group (see, e.g.,Loving v. Virginia, 388 U.S. 1 (1967)) or a fundamental right, such as the right to vote (see Dunn v. Blumstein, 405 U.S. 330 (1972)), it is necessary to show that the disparity is arbitrary. That is, the disparity must be shown to have no conceivable rational basis or rational relation to a legitimate governmental end. Fitzgerald v. RacingAssn. of Central Iowa, 539 U.S. 103 (2003); Vacco v. Quill, 521 U.S. 793
(1997); Craft v. City of Fort Smith, 335 Ark. 417, 984 S.W.2d 22 (1998);Medlock v. Leathers, 311 Ark. 175, 842 S.W.2d 428 (1992), reh. denied, 1993. Quasi-suspect classifications, like gender, are subject to a heightened standard of review. To withstand constitutional challenges, classifications based on gender "must serve important governmental objectives and must be substantially related to those objectives."Craig v. Boren, 429 U.S. 190, 197 (1976). Applying this so-called "intermediate scrutiny," the court has stated that "[p]arties who seek to defend gender-based government action must demonstrate an exceedingly persuasive justification for that action. . . ." United States v.Virginia, 518 U.S. 515, 531 (1996).
As the foregoing makes clear, it is necessary to first identify the governmental classification in order to determine the level of scrutiny to be applied in assessing the classification's constitutionality. The threshold question, therefore, is: "How is the government drawing a distinction between groups of people?" Regarding HB 1037, you have expressed the concern that there is disparate treatment of male and female prisoners under the bill. You state: *Page 3 
 If this bill becomes law, the State will be treating female prisoners differently from male prisoners while in recovery from a medical procedure. It will also treat male specific conditions such as prostate cancer different from female specific conditions.
These observations suggest that the bill draws a distinction between pregnant inmates and male inmates. In truth, however, the bill distinguishes between pregnant inmates and nonpregnant inmates. In other words, the bill draws a distinction among inmates based on pregnancy. Because pregnancy is a characteristic pertaining only to women, it might appear evident that the bill facially classifies on the basis of gender, triggering intermediate scrutiny under equal protection analysis. Significantly, however, the U.S. Supreme Court has held that discrimination based on pregnancy is not sex-based. In Geduldig v.Aiello, 417 U.S. 484 (1974), the Court held that a state disability insurance system that excluded pregnancy from coverage did not discriminate on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment. According to Geduldig, a pregnancy-based classification is not a sex-based classification for purposes of the Equal Protection Clause because it divides potential beneficiaries into two groups: pregnant women and non-pregnant persons, including nonpregnant women.[2] The Court in Geduldig distinguished the classifications the Court had found unconstitutional as "involving discrimination based upon gender as such." 417 U.S. at 496 n. 20 (citingReed v. Reed, *Page 4 404 U.S. 71 (1971) and Frontiero v. Richardson, 411 U.S. 677 (1973), cases involving explicit gender classifications, where the members of the resulting classes had, by definition, only their gender in common). The Court reasoned:
 The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition — pregnancy — from the list of compensable disabilities. While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification. . . . Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.
 The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups — pregnant women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes.
417 U.S. at 496-97 n. 20 (emphasis added)
The Court has applied Geduldig's reasoning in other contexts. InBray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993), the Court determined that "women seeking abortion" were not a protected class, when considering whether those blocking access to abortion clinics were engaged in a form of gender discrimination in violation of federal civil rights statutes. The Court rejected the proposition that "since voluntary abortion is an activity engaged in only by women, [footnote omitted] to disfavor it is ipso facto to discriminate invidiously against women as a class." Id. at 271. The Court observed that "men and women are on both sides of the issue, just as men and women are on both sides of petitioners' unlawful demonstrations.")Id. Like the Supreme Court in Geduldig, lower federal courts have sustained state action disproportionately, or *Page 5 
exclusively, affecting one gender. See, e.g., Bond v. VirginiaPolytechnic Institute State University, 381 F. Supp. 1023 (W.D. Va. 1974) (invoking Geduldig to reject an equal protection challenge to a university student health plan that did not include gynecological examinations and pap tests).
It seems clear in light of this judicial precedent that the constitutional test applicable to HB 1037 is not the heightened-scrutiny standard that the cases demand for sex-based discrimination, but the ordinary rationality standard. In the absence of improper gender based distinctions, a statute will be upheld against an equal protection challenge if it is rationally related to a legitimate state objective. The courts must not only presume the constitutionality of the challenged classification under this standard; they must also uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Ester v. National Home Ctrs.,Inc., 335 Ark. 356, 981 S.W.2d 91(1998); Reed v. Glover, 319 Ark. 16,889 S.W.2d 729 (1994); Arkansas Hospital Assoc. v. State Board ofPharmacy, 297 Ark. 454, 763 S.W.2d 73 (1989).
In my opinion, HB 1037 would pass judicial scrutiny under this test. As noted by the Court in Geduldig, "pregnancy is an objectively identifiable physical condition with unique characteristics."417 U.S. at 496. It is not difficult to conceive of a rational basis for the bill in light of the physical impairment and other particular difficulties that attend labor and delivery, as well as the additional factor of the safety of the child. Accordingly, the bill is constitutional in my opinion.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The Supreme Court of Arkansas has not announced any difference in the protections afforded by the equal protection clauses of the Constitutions of the United States and of Arkansas, and I assume for purposes of this opinion that such protections are co-extensive.
[2] After the Court extended Geduldig to Title VII of the Civil Rights Act of 1964, in General Electric Company v. Gilbert, 429 U.S. 125
(1976), Congress reacted swiftly with the enactment of the Pregnancy Discrimination Act (PDA) of 1978, which explicitly amended Title VII to provide that for employment-related purposes, discrimination "on the basis of sex" includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § (s) 2000e(k) (1994). The act states in relevant part:
 The terms `because of sex' or `on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . . .
Id.